## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION

| | |
|---|---|
| FOUNDATION RESOLUTION CORP., f/k/a Citrus Memorial Health Foundation Inc., <br><br> Plaintiff, <br><br> v. <br><br> AON HEWITT INVESTMENT CONSULTING, INC., f/k/a Hewitt EnnisKnupp, Inc. and ALIGHT SOLUTIONS LLC, f/k/a Hewitt Associates LLC, <br><br> Defendants. | Case No.: 5:18-cv-00458-JSM-PRL |

## DEFENDANTS' MOTION TO DISMISS COMPLAINT, SUPPORTING MEMORANDUM OF LAW, AND REQUEST FOR ORAL ARGUMENT

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ....................................................................................................... 6

I.     ERISA Does Not Authorize FRC's ERISA Claims (Counts I & II). .......................... 7

     A.     ERISA Does Not Authorize FRC To Sue. ....................................................... 7

     B.     FRC Has Not Alleged Any Injury To The Plan. ............................................... 9

     C.     FRC Has Not Pleaded That Either Defendant Is A Fiduciary With Respect To The Conduct At Issue. ............... 12

II.     FRC's Professional Malpractice Claim (Count III) Should Be Dismissed With Prejudice. ....................... 15

     A.     FRC Does Not Allege Facts Showing That Hewitt Owed Any Duty to FRC. ........................ 15

     B.     Count III Must Be Dismissed Under The Economic Loss Doctrine. ............. 16

III.     FRC's Breach Of Contract Claim (Count IV) Should Be Dismissed With Prejudice. ..................... 19

     A.     FRC Is Not A Party To The MCA. .................................................................. 19

     B.     FRC Has Not Pleaded Entitlement To Any Cognizable Relief. ..................... 20

          1.     The MCA Bars Recovery Of The Consequential Damages FRC Seeks. ...................... 21

          2.     FRC Has Not Pleaded That The Value Of Hewitt's Services Was Less Than What Was Paid For Them. ......................... 23

     C.     FRC Has Not Pleaded That The Pension Committee Performed All Obligations Under The MCA. ................... 24

REQUEST FOR ORAL ARGUMENT ................................................................. 25

CONCLUSION ................................................................................................... 25

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*,
  555 N.E.2d 346 (Ill. 1990) ...................................................................................17

*Album Graphics, Inc. v. Beatrice Foods Co.*,
  408 N.E.2d 1041 (Ill. App. Ct. 1980) ..................................................................20

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) .............................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................7

*Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*,
  64 N.E.3d 1178 (Ill. App. Ct. 2016) ...................................................................19

*Bacon v. Stiefel Labs., Inc.*,
  677 F. Supp. 2d 1331 (S.D. Fla. 2010) ..................................................................8

*Barry v. St. Mary's Hosp. Decatur*,
  68 N.E.3d 964 (Ill. App. Ct. 2016) ......................................................................19

*Batson v. Oak Tree, Ltd.*,
  2 N.E.3d 405 (Ill. App. Ct. 2013) ........................................................................19

*Beck v. PACE Int'l Union*,
  551 U.S. 96 (2007).................................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................6

*Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*,
  658 F. App'x 966 (11th Cir. 2016) ........................................................................8

*Cent. Diversey M.R.I. Ctr., Inc. v. Med. Mgmt. Scis., Inc.*,
  No. 96 C 4588, 1997 WL 769350 (N.D. Ill. Dec. 5, 1997) ................................23

*Chen v. Lester*,
  No. 608CV1954ORL22GJK, 2009 WL 10698631 (M.D. Fla. Mar. 19,
  2009) .....................................................................................................................20

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,
    636 N.E.2d 503 (Ill. 1994) ...................................................................16, 17, 19

*Cotton v. Mass. Mut. Life Ins. Co.*,
    402 F.3d 1267 (11th Cir. 2005) ........................................................................8

*Cox Enterprises, Inc. v. News-Journal Corp.*,
    No. 6:04-CV-698-ORL-28, 2014 WL 3962694 (M.D. Fla. Aug. 13, 2014) ....................11

*Duncan v. Muzyn*,
    885 F.3d 422 (6th Cir. 2018) ........................................................................10

*Focus Mgmt. Grp. USA, Inc. v. King*,
    171 F. Supp. 3d 1291 (M.D. Fla. 2016) ............................................................16

*Gale v. Williams*,
    701 N.E.2d 808 (Ill. App. Ct. 1998) ................................................................16

*Gerosa v. Savasta & Co*,
    329 F.3d 317 (2d Cir. 2003) ......................................................................22, 23

*Grp. Hospitalization & Med. Servs. v. Merck-Medco Managed Care*,
    295 F. Supp. 2d 457 (D.N.J. 2003) ..................................................................13

*Hamilton v. Wal Mart Stores, Inc.*,
    No. CV-04-RRA-3486-S, 2006 WL 8437656 (N.D. Ala. Apr. 13, 2006) ..........................8

*Hilderbrandt v. Butts*,
    550 F. App'x 697 (11th Cir. 2013) ....................................................................7

*Hoopla Sports & Entm't, Inc. v. Nike, Inc.*,
    947 F. Supp. 347 (N.D. Ill. 1996) ...................................................................25

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2022) ........................................................................8

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)......................................................................................11

*In re Ameriquest Mortg. Co.*,
    No. 05-7097, 2010 WL 290493 (N.D. Ill. Jan. 19, 2010)..........................................17, 18

*In re Luna*,
    406 F.3d 1192 (10th Cir. 2005) ........................................................................9

*In re Polo Builders, Inc.*,
  388 B.R. 338 (Bankr. N.D. Ill. 2008) ..............................................................21

*Johnson v. Mutual Savs. Bank*,
  No. 95 C 2379, 1996 WL 79414 (N.D. Ill. Feb. 21, 1996).........................................17, 18

*Koehler v. Packer Grp., Inc.*,
  53 N.E.3d 218 (Ill. App. Ct. 2016) ..............................................................19

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008)................................................................................9

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) ......................................................................10

*Markborough Cal., Inc. v. Superior Court*,
  277 Cal. Rptr. 919 (Cal. Ct. App. 1991)...........................................................20

*Marroy v. Ondeo Nalco*,
  No. 01-1216, 2001 WL 1164856 (E.D. La. Sept. 28, 2001)..........................................10

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..............................................................................9, 10

*MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*,
  845 N.E.2d 22 (Ill. App. Ct. 2006) ..............................................................23

*Mellon Bank, N.A. v. Levy*,
  No. CIV.A. 01-1493, 2002 WL 664022 (W.D. Pa. Apr. 22, 2002)..................................13

*Monper v. Boeing Co.*,
  104 F. Supp. 3d 1170 (W.D. Wash. 2015).......................................................13

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  435 N.E.2d 443 (Ill. 1982) ....................................................................17, 18

*MMS USA holdings, Inc, v. PwC LLP*,
  No. 650382/12, 2013 WL 1154932 (N.Y. Sup. Ct. Mar. 19, 2013) .............................22

*Nat'l Inv'r Services Corp. v. Integrated Fund Services, Inc.*,
  85 Fed. App'x 779 (2d Cir. 2004)................................................................22

*New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v.
  Mercer Inv. Consultants*,
  635 F. Supp. 2d 1351 (N.D. Ga. 2009) .........................................................10

*Palmolive Tower Condominiums, LLC v. Simon*,
   949 N.E.2d 723 (Ill. App. Ct. 2011) ...........................................................................20

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)..........................................................................................................13

*Pension Benefit Guaranty Corp. v. Artra Group, Inc.*,
   972 F.2d 771 (7th Cir. 1992) ...........................................................................................11

*Perelman v. Perelman*,
   919 F. Supp. 2d 512 (E.D. Pa. 2013) ............................................................................10

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016) ...........................................................................................12

*Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*,
   589 N.E.2d 1034 (Ill. App. Ct. 1992) ............................................................................20

*Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*,
   286 F.3d 1001 (7th Cir. 2002) ...................................................................................21, 22

*Rosario-Gonzalez v. U.S.*,
   516CV106OCCEMPRL, 2016 WL 6078329 (M.D. Fla. Apr. 25, 2016).....................7, 8

*Severstal Wheeling, Inc. v. WHX Corp.*,
   659 F. App'x 28 (2d Cir. 2016) ......................................................................................8, 9

*Smith v. Nat'l Credit Union Admin. Bd.*,
   36 F.3d 1077 (11th Cir. 1994) .........................................................................................13

*Soehnlen v. Fleet Owners Ins. Fund*,
   844 F.3d 576 (6th Cir. 2016) .............................................................................................9

*Sonoco Prod. Co. v. Physicians Health Plan, Inc.*,
   338 F.3d 366 (4th Cir. 2003) ...........................................................................................10

*Spaulding v. Woodall*,
   No. 4:11-CV-00605-MP-CAS, 2015 WL 1632640 (N.D. Fla. Apr. 13,
   2015) ..................................................................................................................................20

*Stark v. Mars, Inc.*,
   790 F. Supp. 2d 658 (S.D. Ohio 2011) ............................................................................9

*Thole v. U.S Bank, N.A.*,
   873 F.3d 617 (8th Cir. 2017) ...........................................................................................10

*Toumajian v. Frailey*,
  135 F.3d 648 (9th Cir. 1998) ..........................................................................................11

*Trujillo v. Am. Bar. Ass'n*,
  706 Fed. App'x 868 (7th Cir. 2017) ...............................................................................11

*Useden v. Acker*,
  947 F.2d 1563 (11th Cir. 1991) ......................................................................................13

*Wausau Underwriters Ins. Co. v. Pronto Staffing Servs., Inc.*,
  No. 11 C 928, 2011 WL 6016284 (N.D. Ill. Dec. 2, 2011) ...................................16, 17, 18

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ..........................................................................................17

*Woodruff & Sons, Inc. v. Covenant Servs. Grp., LLC*,
  No. 8:11-CV-1096-T-30TBM, 2011 WL 2694299 (M.D. Fla. July 12,
  2011) ...............................................................................................................................10

## STATUTES

29 U.S.C. § 1001 .......................................................................................................................10

29 U.S.C. § 1106 .......................................................................................................................12

29 U.S.C. § 1109 .........................................................................................................................9

29 U.S.C. § 1132 .........................................................................................................................7

29 U.S.C. § 1341 ...........................................................................................................3, 11, 12

## OTHER AUTHORITIES

29 C.F.R. § 2509.75-5 ...................................................................................................13, 14, 15

29 C.F.R. § 4041.21 ...............................................................................................................3, 12

29 C.F.R. § 4041.28 ...............................................................................................................3, 12

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 6

Lee T. Polk, *Plan termination and insolvency—Single-employer plan
  terminations* .....................................................................................................................11

Pension Benefit Guaranty Corp., Schedule EA-S, Part V, Standard
   Termination Certification of Sufficiency, *available at*
   *https://www.pbgc.gov/sites/default/files/500and501a.pdf#page=3* ...................................11

Pension Benefit Guaranty Corp., Standard Termination, *available at*
   *https://www.pbgc.gov/prac/terminations/standard-terminations* (last
   visited Oct. 14, 2018) ................................................................................................3

Restatement (Second) Contracts § 347 ...........................................................................20, 22

24 Williston on Contracts § 64:4 (4th ed. 1993) ..................................................................23

Defendants Aon Hewitt Investment Consulting, Inc. ("AHIC") and Alight Solutions LLC ("Alight") move to dismiss with prejudice the complaint of plaintiff Foundation Resolution Corporation ("FRC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and submit this supporting memorandum of law.

In about 2014, FRC wanted to terminate a defined benefit retirement plan that it sponsored.  However, the plan's benefit payments liabilities exceeded its assets.  That meant that, under federal law, FRC needed to eliminate the shortfall by contributing money to the plan before it could be terminated.  FRC alleges that two service providers—AHIC, which FRC alleges is formerly known as Hewitt EnnisKnupp, Inc. ("HEK"), and Alight, which FRC alleges is formerly known as Hewitt Associates LLC ("Hewitt")—were hired to provide consulting services regarding how to reduce the shortfall.  The shortfall was not reduced as much as FRC had hoped, and FRC now seeks to shift its own funding responsibility to HEK and Hewitt.  As a matter of law, however, FRC may not do so.

In Counts I and II, FRC alleges that HEK and Hewitt each violated ERISA by breaching their alleged fiduciary duties.  Those allegations fail to state a claim on several levels.  *First*, ERISA carefully delineates who may sue for breach of fiduciary duty, and FRC may only do so if it is a "plan fiduciary."  FRC, however, has failed to adequately allege that it is a plan fiduciary.  The Pension Committee of FRC's Board of Directors, as the plan's administrator, is a plan fiduciary, but it has not sued.  *Second*, ERISA only permits claims alleging injury *to the plan*, for example, by alleging that the plan is unable to make benefit payments.  There are no such allegations in the complaint.  The only potential alleged injury is to FRC, which may have to pay more than it had hoped to meet the plan's benefit payment liabilities.  That is not

a cognizable plan injury.  *Third*, a breach of fiduciary duty claim can withstand a motion to dismiss only if the defendants actually owed a fiduciary duty to the plan and the allegedly wrongful conduct was within the scope of that duty.  But here, FRC does not plead that HEK and Hewitt were fiduciaries with respect to the allegedly wrongful conduct.  Parties that merely provide advice to plan trustees, as HEK and Hewitt allegedly did here, are not fiduciaries; they lack the necessary discretionary control over plan assets that is the hallmark of a fiduciary.

Count III, a claim for professional malpractice against Hewitt, fails as a matter of law for at least two reasons.  *First*, FRC alleges no facts establishing that Hewitt owed it any duty of care.  Hewitt did not enter into any agreement with FRC; rather, its agreement was with the plan administrator—the Pension Committee.  Thus, FRC cannot claim any breach of a duty of care owed to it.  *Second*, even if FRC were the proper plaintiff, Count III should still be dismissed because, under Illinois law (which controls here), the economic loss doctrine prevents plaintiffs from dressing up breach of contract claims as tort claims.  And the consulting services at issue do not give rise to any extracontractual duty of care sufficient to exempt this claim from the economic loss doctrine.

Finally, Count IV, for breach of contract against Hewitt, should be dismissed for three reasons.  *First*, FRC had no contract with Hewitt, and thus cannot claim any breach of contract. The contract was between defendants and the Pension Committee, not FRC.  *Second*, the breach of contract claim must be dismissed because FRC has not pleaded any legally cognizable damages.  It mainly seeks consequential damages in the form of the purported loss that it experienced as a consequence of the alleged breach, but the contract clearly bars any claim for consequential damages.  To the extent FRC also seeks the disgorgement of money

paid to Hewitt, that relief is unavailable because FRC has not alleged that Hewitt's services were worth less than what Hewitt was paid.  *Third*, the complaint does not allege that the Pension Committee performed all of its contractual duties.  Accordingly, Count IV fails as a matter of law.  As a result, the complaint should be dismissed with prejudice in its entirety.

## FACTUAL BACKGROUND

From 1990 to 2014, FRC operated the Citrus County Hospital.  (Compl. ¶¶ 20, 23.) During that time, FRC offered its employees a defined benefit pension plan (the "Plan").  (*Id.* ¶¶ 20-21, 23.)  In 2014, FRC lost its contract to operate the hospital, and decided to terminate the Plan.  (*Id.* ¶¶ 22-24.)  A defined benefit plan ordinarily cannot be terminated unless it has enough money to pay all of the benefits owed to its participants and beneficiaries.  29 U.S.C. § 1341(b)(1)(D).  In order to terminate a plan that does not have enough money, a plan sponsor can make up the shortfall by contributing money to the plan.  29 C.F.R. §§ 4041.21(b), 4041.28.

As part of terminating a defined benefit plan, the plan administrator uses the plan's funds to purchase an annuity from an insurance company to secure the stream of pension payments the plan participants were promised under the plan.[1]  If the governing plan permits, at the participant's option, the benefit owed may instead be paid to the participant as a lump sum.  *Id.*; *see also* Compl. ¶ 1.  FRC alleges that, in the Plan's case, such an option was allowed, and that it was cheaper for the Plan to make lump sum payments to participants than to buy annuities.  (Compl. ¶ 4.)  FRC therefore preferred that as many participants as possible select the lump sum option, because that would reduce the shortfall between the Plan's assets and its

---

[1] Pension Benefit Guaranty Corp., Standard Termination, *available at* https://www.pbgc.gov/prac/terminations/standard-terminations (last visited Oct. 14, 2018).

benefit obligations.  (*Id.*)  That, in turn, would reduce the amount of money FRC had to pay into the Plan.  (*Id.*)

In response to a solicitation, HEK and Hewitt made a proposal to provide termination-related services to the Plan.  (Compl. ¶ 25.)  The Pension Committee, in its role as plan administrator, negotiated and entered into a Master Consulting Agreement ("MCA") with HEK and Hewitt.  (Compl. ¶ 24; MCA, Dkt. 1 at 39.)  The MCA delineates HEK's and Hewitt's termination-related work in six schedules, three of which are relevant to FRC's claims.  Schedule 1 calls for HEK to provide investment consulting and delegated investment management services, which involved reviewing the Plan's risk posture, asset allocation strategy, investment adviser structure, and investment advisers.  (MCA Sched. 1, Dkt. 1 at 48, 52-54.)  Schedule 4 called for Hewitt to provide pension administration services for a "lump sum initiative," which involved calculating benefits, sending a lump sum window announcement letter to participants, processing participant elections, and staffing a call center to help participants understand the election forms.  (MCA Sched. 4, Dkt. 1 at 63-64.)  Schedule 5 called for Hewitt to provide communication consulting services for a "lump sum distribution," which involved sending participants a lump sum window announcement self-mailer, sending participants an election kit with "a 4-page, non-personalized color brochure describing the choices and election process," sending participants two reminder flyers, providing "call center representatives with sample FAQs and a brief script to use in describing the lump sum window to participants," conducting two days of employee meetings, recording a webinar, and printing posters to be displayed in the hospital.  (MCA Sched. 5, Dkt. 1 at 68-69.)

The MCA provides several limitations of liability, including:

- "In no event will either party be liable to the other party for incidental, consequential, special, or punitive damages (including loss of profits, data, business or goodwill, or government fines, penalties, taxes, or filing fees), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages." (MCA § 9(d), Dkt. 1 at 45.)

- HEK and Hewitt "will not be liable to Client [the Committee] for any amounts for which Client or any of its employee benefits plans would have been responsible to pay irrespective of any act, error or omission by [HEK and Hewitt], including interest adjustments." (MCA § 8(d), Dkt. 1 at 44.)

- HEK's and Hewitt's liability is generally limited to fees paid within the past 12-month period for services provided under the relevant MCA schedule.  (MCA § 9, Dkt. 1 at 44.)

- In connection with HEK's investment consulting and pension risk management, "absent (i) an action of HEK which is judicially-determined to be in breach of its fiduciary duty under ERISA or (ii) HEK's willful misconduct, bad faith, or negligence, HEK  will not be responsible for any losses arising out of the risks described in this Schedule."  (MCA Sched. 1, Dkt. 1 at 49.)

Schedule 1, the investment consulting schedule, also provides that "there can be no assurance as to any specific level of investment performance of any strategy or actions that HEK or any sub-advisor may take on behalf of the Plan or Client," and reiterates that the MCA's limitation of liability applies.  (MCA Sched. 1, Dkt. 1 at 50.)

In its complaint, FRC alleges that HEK provided poor quality investment services in connection with its work under MCA Schedule 1.  (Compl. ¶¶ 2-3, 36, 104.)  As of January 2015, the Plan had a $6 million deficit—$118 million in assets and $124 million in liabilities.  (*Id.* ¶ 49.)  HEK allegedly recommended a "Hedge Path" investment strategy to reduce that deficit.  (*Id.*)  FRC alleges that this strategy was flawed, that Plan assets declined by about $3 million in the second half of 2015 and $6 million in the second half of 2016, and that there

ultimately was an unspecified "multi-million dollar shortfall in Plan assets."  (*Id.* ¶¶ 60, 74, 97.)

Additionally, FRC alleges that Hewitt's services under MCA Schedules 4 and 5, relating to an initiative intended to encourage participants to choose lump sum payments instead of annuities, were of poor quality.  (Compl. ¶¶ 45-46, 127.)  It alleges that Hewitt first recommended scheduling the lump sum communications for as early as mid-2015, but also recommended awaiting an IRS determination letter.  (*Id.* ¶¶ 45-46.)  When the IRS determination letter had not come by mid-2016, Hewitt recommended implementing the lump sum initiative without waiting any longer.  (*Id.* ¶ 85.)  FRC alleges that the delay of the lump sum initiative until 2016, and the way the lump sum option was communicated to participants, meant that fewer participants chose a lump sum, and consequently it cost more to purchase annuities to terminate the Plan.  (*Id.* ¶ 96.)  Although this (combined with the alleged shortfall) should have meant that FRC had to contribute more money to the Plan to fund those more costly benefits, FRC alleges that the Plan "ultimately needed to borrow millions of dollars to fulfill its obligations to Plan participants."  (*Id.* ¶ 97.)

## ARGUMENT

Rule 12(b)(6) requires dismissal unless a plaintiff asserts facts that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action" does not suffice.  *Id.*  The Eleventh Circuit evaluates complaints using a two-pronged approach:  "First, 'eliminate any allegations in the complaint that are merely legal conclusions,' and then, 'where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise

to an entitlement to relief.'" *Rosario-Gonzalez v. U.S.*, 516CV106OCCEMPRL, 2016 WL 6078329, at *2 (M.D. Fla. Apr. 25, 2016) (Lammens, Mag. J.) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)), *adopted by*, No. 5:16-CV-106-OC-41PRL, 2016 WL 6037385 (M.D. Fla. Oct. 14, 2016), *appeal dismissed*, No. 16-16689-F, 2017 WL 5125558 (11th Cir. Aug. 17, 2017).  A complaint must be dismissed absent "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal with prejudice is appropriate "if granting leave to amend would be futile." *Hilderbrandt v. Butts*, 550 F. App'x 697, 699 (11th Cir. 2013).

## I.     ERISA Does Not Authorize FRC's ERISA Claims (Counts I & II).

Counts I and II allege that HEK and Hewitt, respectively, breached their fiduciary duties to the Plan in violation of ERISA.  (Compl. ¶¶ 103-04, 110-11.)  These claims fail to plead the elements of a breach of fiduciary duty, and should be dismissed, for three independent reasons:  FRC does not allege a proper plaintiff, a proper defendant, or an actionable injury under ERISA.

### A.     ERISA Does Not Authorize FRC To Sue.

ERISA does not authorize non-fiduciary plan sponsors like FRC to bring breach of fiduciary duty claims.  In ERISA §§ 502(a)(2) and (3), the provisions under which FRC seeks relief, Congress specified with particularity which parties may bring suit for a breach of fiduciary duty:  the Secretary of Labor, a participant, a beneficiary, or a plan fiduciary.  29 U.S.C. §§ 1132(a)(2), (a)(3).

Here, FRC asserts that it is a Plan fiduciary (Compl. ¶¶ 106, 118), but it is not, and FRC's bare legal conclusion is insufficient to survive a motion to dismiss.  Under ERISA, there are two ways to become a plan fiduciary:  (1) being named as a fiduciary in plan documents, or (2) having discretion and control over plan assets.  *See Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016).  Plan sponsors like FRC are not fiduciaries unless they fall into one of those two groups, and to survive a motion to dismiss, a plaintiff must plead facts sufficient to allege its fiduciary status of one kind or the other.  *See Severstal Wheeling, Inc. v. WHX Corp.*, 659 F. App'x 28, 30 (2d Cir. 2016) (finding that plaintiff failed to adequately allege that plan sponsor was a fiduciary).  Where "a plaintiff merely 'recites portions of the statutory definition' of an ERISA fiduciary without pleading any other facts, the complaint fails to sufficiently allege fiduciary status."  *Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331, 1341 (S.D. Fla. 2010) (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005)); *Rosario-Gonzalez*, 2016 WL 6078329, at *2.

Here, no facts alleged in the complaint support FRC's conclusory assertion that it is a fiduciary of either type.

First, the Plan document designates the Pension Committee, not FRC, as the Plan's Administrator.  (Ex. A, Citrus Memorial Health Foundation, Inc. Pension Plan, Amended and Restated Effective Jan. 1, 2009 §§ 3.1 et seq.)[2]  FRC wrongly alleges that "FRC, through the Pension Committee of its Board of Directors, is the sponsor and administrator of the Plan."

---

[2] The court may consider the Plan document (Ex. A) on this motion to dismiss because the Plan is at issue and the authenticity of the Plan document is not in dispute.  *See Hamilton v. Walmart Stores, Inc.*, No. CV-04-RRA-3486-S, 2006 WL 8437656, at *4 (N.D. Ala. Apr. 13, 2006) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

(Compl. ¶ 9.)  But FRC's status as a plan sponsor does not make it a fiduciary; the sponsor is not charged with administering and controlling the Plan's assets.  *Seversal Wheeling*, 659 F. App'x at 30-31.  FRC and the Pension Committee of its Board are separate entities and should not be conflated.  Indeed, it is ordinarily the case that once the employer "appoint[s] the Pension Administrator and [gives] him control over the Plan" in the Plan document, the employer is "no longer a fiduciary."  *In re Luna*, 406 F.3d 1192, 1206 (10th Cir. 2005) (citation omitted); *see also Stark v. Mars, Inc.*, 790 F. Supp. 2d 658, 667 (S.D. Ohio 2011) (finding that Mars was not a fiduciary where "[t]he Plan itself provides that the [Mars Benefit Plans Committee] is the Plan Administrator" and there were no allegations that Mars had discretionary authority or control).  Second, the complaint is bereft of allegations that FRC had discretion or control over Plan assets.  Because FRC is not a Plan fiduciary, it has no authority to bring its ERISA claims.

### B.     FRC Has Not Alleged Any Injury To The Plan.

FRC's failure to allege any injury to the Plan is an independent basis for dismissing Counts I and II with prejudice.  ERISA's fiduciary duty provisions only authorize recovery for losses to plans—not losses to plan sponsors, or anyone else.  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also* 29 U.S.C. § 1109 (plan fiduciaries are liable to the plan for "losses to the plan resulting from [fiduciary] breach").  Plaintiffs who "make no showing of actual or imminent injury to the Plan itself" have no ERISA claim.  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 585 (6th Cir. 2016); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008) (holding fiduciary misconduct does not affect participants' benefits unless it creates or enhances risk of plan default).  A plan and its participants have not

been injured if the plan is funded and able to pay out all promised benefits. *Duncan v. Muzyn*, 885 F.3d 422, 428 (6th Cir. 2018); *Thole v. U.S Bank, N.A.*, 873 F.3d 617, 630 (8th Cir. 2017); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 548 (5th Cir. 2016); *see also Perelman v. Perelman*, 919 F. Supp. 2d 512, 519 (E.D. Pa. 2013), *aff'd*, 793 F.3d 368 (3d Cir. 2015).

That is because ERISA is aimed at protecting "the soundness and stability of [employee benefit] plans." 29 U.S.C. § 1001(a). ERISA's drafters "were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan." *Mass. Mut.*, 473 U.S. at 142. "Congress did not intend [§ 409] to authorize any relief except for the plan itself." *Id.* at 144; *see also New Orleans Emp'rs Int'l Longshoremen's Ass'n, AFL-CIO Pension Fund v. Mercer Inv. Consultants*, 635 F. Supp. 2d 1351, 1379 (N.D. Ga. 2009) (The "plan is the real party in interest in any action alleging a breach of fiduciary duty.").

ERISA does not govern commercial relationships between plan sponsors and vendors. *See Woodruff & Sons, Inc. v. Covenant Servs. Grp., LLC*, No. 8:11-CV-1096-T-30TBM, 2011 WL 2694299, at *1 (M.D. Fla. July 12, 2011) (Moody, J.) (holding that a plan sponsor's claim against a service provider was a breach of contract claim, not an ERISA claim). Where a plan sponsor's "claims in a lawsuit relate solely to its own injuries . . . it is not acting as an ERISA fiduciary" and does not have an ERISA claim. *Sonoco Prod. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003); *Marroy v. Ondeo Nalco*, No. 01-1216, 2001 WL 1164856, at *2 (E.D. La. Sept. 28, 2001) (dismissing ERISA claim where plaintiff "alleg[ed] injury to herself alone"). For example, in *Sonoco*, an employer had only a contract claim, not an ERISA claim against a health insurer, for losses due to the insurer's contract cancellation, because its harm was "independent from any harm suffered by the Plan Beneficiaries." 338

F.3d at 374.  Likewise, in *Trujillo*, a former plan administrator's ERISA claims failed because "he asks only for . . . relief that will make *him* whole.  He is thus suing as a private individual, not a fiduciary." *Trujillo v. Am Bar. Ass'n*, 706 Fed. App'x 868, 870 (7th Cir. 2017); *see also Toumajian v. Frailey*, 135 F.3d 648, 656 (9th Cir. 1998) (finding claim against accountant hired to set up plan was outside scope of ERISA because it sought damages to sponsor, not the plan).

Here, FRC has not alleged any injury or loss *to the Plan or its participants*.  Rather, its allegations at most show that, as the sponsor of a defined benefit plan, *FRC* will incur the costs of making up a multi-million dollar shortfall resulting from the Plan's underfunding, which will ensure that all of the Plan's participants will receive all of the benefits they were promised.  In a defined benefit plan, the employer has an "obligation to make up any shortfall" if the plan lacks sufficient assets to pay the benefits owed to the plan participants.  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 4440 (1999).  Those obligations continue through plan termination—in a single-employer plan, like the Plan here, "the employer is liable for any underfunding when the employer terminates the plan." *Pension Benefit Guaranty Corp. v. Artra Group, Inc.*, 972 F.2d 771, 772 (7th Cir. 1992); *see also Cox Enterprises, Inc. v. News-Journal Corp.*, No. 6:04-CV-698-ORL-28, 2014 WL 3962694, at *2 n.9 (M.D. Fla. Aug. 13, 2014), *aff'd*, 794 F.3d 1259 (11th Cir. 2015).[3]  Conversely, if there is a surplus of assets at

---

[3] In response to a concern that plan sponsors were "dumping" pension liabilities on the government, Congress passed the Single-Employer Pension Plan Amendments Act of 1986 ("SEPPA").   Lee T. Polk, *Plan termination and insolvency—Single-employer plan terminations*, 2 ERISA Practice and Litigation § 10:44 (July 2018 Update).  Under SEPPA, a sponsor ordinarily cannot terminate a plan unless assets will cover benefit liabilities.  29 U.S.C. § 1341(b)(1)(D).  The plan administrator must certify that "this plan's assets equal or exceed the value of its plan benefits as of the proposed distribution date."  Pension Benefit Guaranty

termination, the sponsor may be able to recoup the surplus funds. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 107 (2007).

Here, FRC's obligation to fund the Plan is confirmed in the Plan document. (Ex. A § 5.1) ("[T]he Employer shall contribute to the Trust such amounts as are required in order to meet the funding requirements imposed by law and to provide the benefits granted by this Plan.") FRC has not alleged that it will be unable to meet its obligations under ERISA, that any participants will see a reduction in their benefits, or that the Plan will remain underfunded. Thus, FRC has not alleged any injury *to the Plan*.[4] Consequently, there is no claim under ERISA.[5]

### C. FRC Has Not Pleaded That Either Defendant Is A Fiduciary With Respect To The Conduct At Issue.

FRC has not adequately pleaded that either HEK or Hewitt was a fiduciary to the Plan with respect to the conduct at issue, which is fatal to its fiduciary breach claims. To state an

---

Corp., Schedule EA-S, Part V, Standard Termination Certification of Sufficiency, *available at https://www.pbgc.gov/sites/default/files/500and501a.pdf#page=3, accord* 29 U.S.C. §§1341(b)(1)-(2). When a plan lacks sufficient assets to cover liabilities, the sponsor may cure that deficiency by making "a commitment to contribute any additional sums necessary to enable the plan to satisfy plan benefits." 29 C.F.R. §§ 4041.21(b)(1), 4041.28.

[4] This situation is distinct from cases where a decrease in plan assets leads to a reduction in plan participants' benefits. *See, e.g., Perez v. Bruister*, 823 F.3d 250, 270-71 (5th Cir. 2016) (holding debt incurred by an employee stock ownership plan diminished value of participants' plan benefits and was therefore an actionable loss under ERISA).

[5] FRC alleges that, as a result of its "unanticipated, multi-million dollar shortfall in Plan assets," "*the Plan* ultimately borrowed millions of dollars to fulfill its obligations to Plan participants." (Compl. ¶ 97 (emphasis added).) That is a curious allegation, because the obligation to make up the shortfall rests on FRC, not the Plan, and a terminated pension plan would seem to be an unattractive borrower. To the extent that FRC caused the Plan to incur debt to avoid FRC's own funding obligations—and it is difficult to imagine how or why else the Plan would borrow—that would be a prohibited transaction under ERISA §§ 406(a-b), and presumptively void. *See* 29 U.S.C. §§ 1106(a-b).

ERISA breach of fiduciary duty claim, a plaintiff must show that the defendant was acting as a fiduciary when it engaged in the allegedly wrongful conduct. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  As explained above (Section I.A), an entity not named as a fiduciary in the plan document only becomes a fiduciary to the extent that it exercises discretionary authority or control over the management or administration of a plan or its assets. *Id.* at 225-26. "[C]onsultants performing their usual professional functions will ordinarily not be considered fiduciaries."  29 C.F.R. § 2509.75-5; *accord Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1079 (11th Cir. 1994) (giving advice on plan revisions and legislative issues was not a fiduciary act); *Useden v. Acker*, 947 F.2d 1563, 1577 (11th Cir. 1991) (giving advice on legal and business issues around investment strategy and other issues was not a fiduciary act); *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1178 (W.D. Wash. 2015) ("[P]rovision of advice is distinct from exercising the necessary discretionary control over management of the plan or its assets.").

Accordingly, allegations that an ERISA service provider provided bad service under a contract do not rise to the level of a fiduciary breach. *See Grp. Hospitalization & Med. Servs. v. Merck-Medco Managed Care*, 295 F. Supp. 2d 457, 464 (D.N.J. 2003) (allegations related to "the terms of the parties' contracts, not the terms of ERISA," and therefore claims did not implicate ERISA).  "[M]ere negligence in the provision of professional services does not create ERISA fiduciary status." *Mellon Bank, N.A. v. Levy*, No. CIV.A. 01-1493, 2002 WL 664022, at *5 (W.D. Pa. Apr. 22, 2002), *subsequently aff'd sub nom. Mellon Bank, N.A. ex rel. Weiss Packing Co. Profit Sharing Plan v. Levy*, 71 F. App'x 146 (3d Cir. 2003).

Here, FRC does not plead that either defendant acted as a fiduciary with respect to the conduct alleged in the complaint.  HEK assumed named fiduciary status only for limited activities relating to the Plan, and Count I does not concern those activities.  In Schedule 1 to the MCA, HEK was "designated as a named fiduciary ('Named Fiduciary') of the Plan solely for the services described in Section 4 of Appendix A" (MCA Sched. 1, Dkt. 1 at 48), which related to "Selection and Monitoring of Sub-Advisors," and not to any activity at issue in the complaint.  (MCA Sched. 1, Dkt. 1 at 5.)

Further, FRC does not allege that HEK acted as a functional fiduciary when it provided advice about the "Hedge Path" strategy.  HEK's alleged breaches included "failing adequately to investigate the suitability [of the Hedge Path strategy]," "misrepresenting the quality, character, and suitability of the 'Hedge Path' strategy and failing to notify FRC of latent defects in that strategy," and failing to monitor the Plan's assets appropriately.  (Compl. ¶ 104.) Schedule 1 to the MCA makes clear that in providing those services, HEK was making *recommendations*, not fiduciary decisions.   For example, HEK was responsible for "[p]repar[ing] a report" that "suggests changes in policies and/or investment allocation, as appropriate."  (MCA Sched. 1, Dkt. 1 at 52.)  HEK could also "make recommendations for changes" to the Plan's Investment Policy Statement.  (*Id.*)  HEK agreed to "conduct an asset-liability study" and "recommend to the Committee an investment structure to meet pension risk objectives as determined by the Committee."  (*Id.*)  HEK would "assist the Committee in designing a customized investment strategy to hedge (reduce) pension surplus risk . . . including recommending changes to the Investment Policy Statement."  (*Id.*)  Merely providing advice and recommendations is not a fiduciary act.  29 C.F.R. § 2509.75-5.

As for Hewitt, the MCA's schedules expressly and repeatedly state that Hewitt was *not* a fiduciary.  They provide that Hewitt "will have no discretionary authority or control over the management or administration of the Plan, nor is it intended that . . . Hewitt will be considered a fiduciary of the Plan" in connection with the services it provides.  (MCA Scheds. 2, 3, 4, Dkt. 1 at 57, 60, 65, 76, 77.)  Nor did Hewitt act as a fiduciary in contravention of the MCA.  FRC alleges no facts showing that Hewitt had any discretionary authority or control over management of the Plan or its assets.  FRC complains that Hewitt recommended FRC delay implementation of the lump sum window (Compl. ¶¶ 82-85, 113) and contends that Hewitt was a fiduciary because it "render[ed] investment advice as to the Plan and Plan assets invested as part of [HEK's] 'Hedge Path' strategy and in the AHGT funds" (*id.* ¶ 110).  But, again, making recommendations and providing advice to the Pension Committee, which retained discretionary authority, does not create a fiduciary relationship.  29 C.F.R. § 2509.75-5.

FRC has not alleged, and cannot allege, that either defendant was a fiduciary of the Plan with respect to the services at issue, and Counts I and II therefore must be dismissed.

## II.   FRC's Professional Malpractice Claim (Count III) Should Be Dismissed With Prejudice.

FRC's Count III, for professional malpractice, should be dismissed with prejudice for two independent reasons.  First, FRC has not alleged any facts showing that Hewitt owed *FRC* any duty of care.  Second, the claim is barred by the economic loss doctrine.

### A.   FRC Does Not Allege Facts Showing That Hewitt Owed Any Duty to FRC.

An essential element of any negligence claim is the existence of a duty, which requires that "the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the

plaintiff." *Gale v. Williams*, 701 N.E.2d 808, 810 (Ill. App. Ct. 1998).[6]   Generally, a professional owes "no duty to the nonclient plaintiff," and non-client professional negligence claims should be dismissed.  *Id.* at 811.  Here, the MCA is between defendants and "the Plan Administrator of the Citrus Memorial Health Foundation, Inc. ('Client') Pension Plan ('Plan')."  (MCA, Dkt. 1 at 39.)  The Plan Administrator is the Pension Committee, as reflected in the MCA signature block (*id.*) and in the Plan document (Ex. A §§ 3.1 et seq.).  The MCA further provides that "[t]his Agreement has been entered into for the sole benefit of Client and [HEK and Hewitt], and in no event will any third-party benefits or obligations be created thereby."  (MCA § 13(b), Dkt. 1 at 45.)  Thus, any alleged professional relationship was between defendants and the Pension Committee, not FRC.  As a non-client, FRC cannot assert a professional negligence claim, and Count III fails as a result.

## B.    Count III Must Be Dismissed Under The Economic Loss Doctrine.

Count III is also barred by the economic loss doctrine.  The economic loss doctrine "prohibits recovery in tort for purely economic losses, subject to certain limited exceptions."  *Wausau Underwriters Ins. Co. v. Pronto Staffing Servs., Inc.*, No. 11 C 928, 2011 WL 6016284, at *3 (N.D. Ill. Dec. 2, 2011) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448 (Ill. 1982) and dismissing counterclaim for professional negligence).  "A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort."  *Congregation of the Passion, Holy Cross*

---

[6] The MCA, which created the relationship under which FRC purports to have a claim, contains an Illinois choice of law provision.  (MCA § 13(l), Dkt. 1 at 46.)  Accordingly, Illinois law applies to the professional negligence and breach of contract claims.  *Focus Mgmt. Grp. USA, Inc. v. King*, 171 F. Supp. 3d 1291, 1296 n.1 (M.D. Fla. 2016).

*Province v. Touche Ross & Co.*, 636 N.E.2d 503, 513-14 (Ill. 1994).  Illinois law applies the economic loss doctrine broadly, including "to the service industry."  *Id.* at 514.

Economic losses are "loss[es] relating to a purchaser's disappointed expectations," meaning the purchaser received less value than expected from a transaction.  *Moorman*, 435 N.E.2d at 450.  For example, in *Wausau Underwriters*, an insurance purchaser asserted that the insurance company investigated a claim poorly and paid out more than necessary, which in turn caused premiums to rise.  2011 WL 6016284, at *2.  The economic loss doctrine precluded recovery of those losses in tort—the insurer's duties were governed by the parties' contract, and the purchaser could not recover on a tort theory.  *Id.* at *3-*4.  Similarly, in *Johnson v. Mutual Savs. Bank*, investors' alleged investment losses due to a bank "not follow[ing] the investment strategy described in its offering materials" were barred as economic losses because they related to the stock purchase transaction.  No. 95 C 2379, 1996 WL 79414, at *6 (N.D. Ill. Feb. 21, 1996).

An exception to the economic loss doctrine may apply where the plaintiff can establish an extracontractual duty.  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012).  But where the alleged extracontractual duties are "no more than a veneer on the alleged contractual duties," a plaintiff cannot make out an independent tort claim.  *In re Ameriquest Mortg. Co.*, No. 05-7097, 2010 WL 290493, at *5 (N.D. Ill. Jan. 19, 2010).[7]

---

[7] Illinois law exempts accountant-client and attorney-client relationships from the economic loss doctrine, *Congregation of the Passion*, 636 N.E.2d at 515, but not other services providers such as architects, *2314 Lincoln Park W. Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 353 (Ill. 1990), and closing agents, title companies, title underwriters and mortgage brokers, *Ameriquest*, 2010 WL 290493 at *4-*5.

The type of relief that FRC seeks here is precluded by the economic loss doctrine.  FRC seeks to recover "losses resulting from [Hewitt's] negligent and incomplete advice."  (Count III ¶ A.)  Just as in *Johnson* and *Wausau*, FRC is seeking damages because it has to pay more money than it would like to terminate the Plan.  *Johnson*, 1996 WL 79414, at *6; *Wausau Underwriters*, 2011 WL 6016284, at *2.  This is a "loss relating to a purchaser's disappointed expectations."  *Moorman*, 435 N.E.2d at 450.  As such, it is barred.

Nor is there any alleged extracontractual duty which could exempt Count III from being barred by the economic loss doctrine.  FRC's tort claim refers to *contractual* duties, alleging that FRC "*hired* [Hewitt] for, among other things, professional advice and consulting services regarding lump sum windows and related matters."  (Compl. ¶ 120 (emphasis added).)  Moreover, the MCA expressly states that no extracontractual services will be provided:  "This Agreement will cover all services provided by [HEK and Hewitt]."  (MCA, Dkt. 1 at 39.)

FRC's conclusory assertion that Hewitt owed FRC a "duty of care to exercise the competence and diligence normally exercised by professional advisors under similar circumstances" (Compl. ¶ 122) is nothing more than a "veneer" on the contractual duties.  *In re Ameriquest Mortg. Co.*, 2010 WL 290493, at *5.  A consultant-client relationship does not give rise to duties sufficient to create a cognizable malpractice claim.  Although FRC alleges that Hewitt "provided its advice and consulting services" through professionals with various qualifications such as a professional actuary (Compl. ¶ 121), Hewitt was hired to provide *consulting* services, not legal or actuarial services.  Schedules 4 and 5 detail those services, which include a "kickoff meeting to identify tasks;" "conference calls to ensure coordination," and "system programming and testing" (MCA Sched. 4, Dkt. 1 at 63); and a "communications

18

campaign" with such features as "reminder calls and e-mails," a "webinar," and "posters, banners, and other print materials" (MCA Sched. 5, Dkt. 1 at 68). Those types of services are not similar to the "skilled professions" of lawyer or accountant. *Congregation of the Passion*, 636 N.E.2d at 515. Count III should be dismissed with prejudice.

### III.     FRC's Breach Of Contract Claim (Count IV) Should Be Dismissed With Prejudice.

A plaintiff seeking to assert a breach of contract claim must plead facts establishing each element of that cause of action—a contract, a breach by the defendant, performance by the plaintiff, and injury caused by the defendant's breach. *Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016) (citing *Batson v. Oak Tree, Ltd.*, 2 N.E.3d 405, 414 (Ill. Ap. Ct. 2013)). Here, FRC fails to state a claim for breach of contract in Count IV for three independent reasons. First, FRC is not a party to the MCA, and therefore cannot sue for breaches of that contract. Second, FRC has not pleaded facts showing entitlement to any cognizable relief—the MCA precludes consequential damages, and FRC has not sufficiently pleaded any direct damages. Third, FRC has not pleaded that the Pension Committee performed all obligations under the MCA.

### A.     FRC Is Not A Party To The MCA.

As a "general rule . . . only parties to an agreement may enforce it. *Koehler v. Packer Grp., Inc.*, 53 N.E.3d 218, 234 (Ill. App. Ct. 2016). "There is a strong presumption against conferring benefits to noncontracting third parties. In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Barry v. St. Mary's Hosp. Decatur*, 68 N.E.3d 964, 976 (Ill. App. Ct. 2016) (citations omitted). Here, however, the MCA expressly provides that it does not benefit

third parties.   (MCA §13(b), Dkt. 1 at 45.)   Thus, because FRC is not a party to the MCA (*supra* Section II.A), it cannot sue for alleged breaches of that contract.

### B.        FRC Has Not Pleaded Entitlement To Any Cognizable Relief.

FRC also has failed to plead a breach of contract for which it is entitled to relief because the MCA precludes consequential damages, and FRC has failed to identify any other sort of injury that is redressible in contract.   Injury is a required element of any breach of contract claim.   *Palmolive Tower Condominiums, LLC v. Simon*, 949 N.E.2d 723, 730 (Ill. App. Ct. 2011).   FRC's claim should be dismissed as a result.   *See Spaulding v. Woodall*, No. 4:11-CV-00605-MP-CAS, 2015 WL 1632640, at *6 (N.D. Fla. Apr. 13, 2015) (dismissing claim where "no relief [was] available"); *Chen v. Lester*, No. 608CV1954ORL22GJK, 2009 WL 10698631, at *15 (M.D. Fla. Mar. 19, 2009) (same).

There are two potential types of injury that are redressible through contract damages: "the loss in the value to [the injured party] of the other party's performance caused by its failure or deficiency," and "any other loss, including incidental or consequential loss, caused by the breach."   Restatement (Second) Contracts § 347 (Am. Law Inst. 1981).   Contracting parties "can exclude or restrict the remedies that a party may have for breach" through contractual limitations on liability.   *Album Graphics, Inc. v. Beatrice Foods Co.*, 408 N.E.2d 1041, 1050 (Ill. App. Ct. 1980); *see also Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*, 589 N.E.2d 1034, 1037 (Ill. App. Ct. 1992).   Enforcing liability limitations is particularly important where, as here, the risk of liability dwarfs revenue from the services.   *See Markborough Cal., Inc. v. Superior Court*, 277 Cal. Rptr. 919, 925 (Cal. Ct. App. 1991).

Here, FRC seeks two species of damages:  (1) "losses resulting from" Hewitt's alleged breaches and (2) the fees paid for defendants' services.[8]  (Compl. ¶ 36.)  But the MCA bars the first, and the second is unavailable because FRC has not pleaded that the services the Plan received were worth less than the fees paid.  Thus, even assuming that FRC were in privity with defendants (which it is not), it has not stated a claim for either type of contract loss.

### 1.      The MCA Bars Recovery Of The Consequential Damages FRC Seeks.

FRC cannot recover the Plan funding and investment losses it seeks as contract damages because the MCA precludes them.  As they are permitted to do, the parties to the MCA expressly excluded consequential damages.  (MCA §9(d), Dkt. 1 at 45.)  They further excluded benefit payment obligations of the Plan (MCA §8(d), Dkt. 1 at 44), amounts in excess of fees paid in a 12-month period (MCA §9, Dkt. 1 at 44), and investment losses (MCA Sched. 1, Dkt. 1 at 49).

Those exclusions preclude recovery for the alleged Plan funding shortfall.  First, those alleged losses are barred as consequential damages.  Consequential damages are damages that "do[] not flow directly and immediately from the [breach] . . . but are the consequences or results of such a[] [breach]."  *In re Polo Builders, Inc.*, 388 B.R. 338, 368 (Bankr. N.D. Ill. 2008).  In a consulting agreement, a client paying "more for [the consultant's] services than it had agreed to do . . . is an example of direct damages."  *Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002).  By contrast, losses *resulting* from the purportedly lacking services are consequential damages.  For example, in *Rexnord*, the fact

---

[8] FRC also requests attorney's fees and other appropriate relief (Count IV ¶¶ C, D), neither of which is substantive relief sufficient to sustain a breach of contract claim.

that a consultant's predicted "$4 million in savings had not yet been achieved" was held to be consequential damages.  *Id.* at 1003-04.  Other consequential damages in that case included "lost business and market share," lost customers, a decline in profits, and a decline in morale. *Id.* at 1003-04; *see also* Restatement (Second) of Contracts §347 cmt. c ("injury to person or property resulting from defective performance" is consequential damages).

Other federal courts have recognized that plan deficits attributed to consultant error are consequential damages.  For example, in *Nat'l Inv'r Services Corp. v. Integrated Fund Services, Inc.*, the defendant, who provided accounting services to a mutual fund administrator, erroneously failed to record two bond purchases, causing the fund to lose more than $1.2 million.  85 Fed. App'x 779, 780 (2d Cir. 2004).  The court ruled that those losses were consequential damages.  *Id.* at 781.  In *Gerosa v. Savasta & Co.*, the plaintiffs, who were fund trustees under ERISA, brought an action against their fund actuary for negligence, asserting that actuarial errors caused a substantial shortfall between the fund's liabilities and assets.  329 F.3d 317, 319-20, 323 (2d Cir. 2003).  The Second Circuit held that "[t]he moneys sought by the [p]laintiffs . . . [we]re simply consequential damages resulting from [the defendant's] alleged negligence," and consequential damages were not available as a remedy.  *Id.* at 321. Likewise, in *MMS USA Holdings, Inc. v. PwC LLP*, a New York court held in a professional negligence action that over $30 million in tax payments resulting from a tax advisor's error were consequential damages, reasoning that "general damages refer to damages based upon the value of performance, not on the value of the consequences of that performance, or the failure to perform."  No. 650382/12, 2013 WL 1154932, at *3-*5 (N.Y. Sup. Ct. Mar. 19, 2013).

Likewise here, the purported Plan deficit constitutes "consequential damages resulting from . . . alleged negligence." *Gerosa*, 329 F.3d at 321.  FRC seeks to recover "losses resulting from [Hewitt's] breach of the MCA."  (Count IV ¶ A.)  For example, FRC alleges that Hewitt's communications services "caused the Plan to have fewer lump sum elections and a greater deficit than would otherwise have resulted."  (Compl. ¶ 96.)  FRC claims that defendants' actions "caused an unanticipated, multi-million dollar shortfall in Plan assets."  (*Id.* ¶ 97.) Those alleged losses are consequential damages, and they are barred by the MCA.

Second, to the extent they are not consequential damages, damages based on the Plan funding shortfall are excluded as required benefit payment obligations and as investment losses (and would be limited by a quantum of defendants' fees even if they were not excluded). (MCA §§ 8(d), 9, Sched. 1, Dkt. 1 at 44, 49.)

## 2.   FRC Has Not Pleaded That The Value Of Hewitt's Services Was Less Than What Was Paid For Them.

FRC also has not pleaded that it is entitled to recover service fees paid to defendants. Loss in value damages are limited to the difference between the "monetary value of the performance that has been promised" and "the value of any performance that has already been given."  24 Williston on Contracts § 64:4 (4th ed. 1993).  To determine that differential, trial courts consider such measures as "the market price" for the services, "cost of replacement," and "the cost of remedying the defective performance."  *Id.*  A full refund of the type FRC seeks here is warranted only where there is a complete failure to provide services.  *See MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006) (restitution of fees paid available for "a total breach or a repudiation of a contract," but award is "reduced by the amount of the defendant's part performance"); *accord Cent. Diversey M.R.I.*

*Ctr., Inc. v. Med. Mgmt. Scis., Inc.*, No. 96 C 4588, 1997 WL 769350, at *3 (N.D. Ill. Dec. 5, 1997) ("The court cannot award [plaintiff] the fees it paid to [defendant] because such a remedy is improper in breach of contract cases.").

Here, FRC asserts that "[i]n light of its deficient efforts [with the communications campaign], [Hewitt] claimed fees to which it was not entitled." (Compl. ¶ 96.) FRC acknowledges, however, that Hewitt performed a communications campaign—one that "yielded an election rate of less than 67%." (*Id.* ¶ 95.) Nonetheless, FRC seeks as damages "all fees and other amounts [Hewitt] received for providing services in connection with the lump sum window, together with pre-judgment interest running from the dates such amounts were received." (Count IV ¶ B.) FRC complains that Hewitt's performance was not "robust" or "comprehensive," lacked "multiple participant touch points and reminders" (Compl. ¶ 90), and was "incomplete" (Compl. ¶ 129). What it does *not* allege is that the Plan received less valuable services than those that were contracted and paid for.

Given that FRC acknowledges that the Pension Committee received services of at least some value, its demand for a full refund of all fees is a nonstarter. Moreover, even if FRC were requesting a partial return of fees paid to Hewitt, its factual allegations would not support that either. FRC has not pleaded any specific facts supporting a conclusion that Hewitt provided services worth less than the Pension Committee contracted for, only that it had hoped for more robust services and a better result. That is not enough to state a legally viable claim.

## C.     FRC Has Not Pleaded That The Pension Committee Performed All Obligations Under The MCA.

In addition to not being a party to the MCA and failing to plead available contract damages, FRC also fails to plead sufficient performance. FRC does not plead that the Pension

Committee fulfilled its contractual obligations, which is an independent ground to dismiss its contract claim.  Where a plaintiff "fails to allege that [it] performed its obligations under the contract," the contract claim must be dismissed.  *Hoopla Sports & Entm't, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 357 (N.D. Ill. 1996).  FRC does not allege that the actual contracting party (the Pension Committee), substantially performed its contractual obligations, which include not only payment, but also providing data.  (*See generally* Compl. Count IV; MCA §§ 1, 7(b), Dkt. 1 at 41, 43.)  Its claim thus fails on its face.

## REQUEST FOR ORAL ARGUMENT

Defendants request oral argument of 30 minutes per side on this motion.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss FRC's complaint in its entirety with prejudice.

Date: October 22, 2018                                    Respectfully submitted,

*/s/ Craig C. Martin*                                        Paul M. Sisco,
Craig C. Martin                                               The Law Office of Paul M. Sisco
Amanda S. Amert                                           101 E. Kennedy Blvd.
Rachel S. Morse                                             Tampa, Florida 33602
Caroline L. Meneau                                        Telephone: (813) 225-1988
Jenner & Block LLP                                        Facsimile:  (813) 225-1392
353 N. Clark Street                                         psisco@paulsiscolaw.com
Chicago, IL 60654-3456
Telephone: (312) 923-2776                            *Attorneys for Defendants*
Facsimile: (312) 527-0484
cmartin@jenner.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2018, I filed the foregoing using the Court's CM/ECF system, which will serve all counsel of record with an electronic copy via email.

/s/ Craig C. Martin

25