# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**FOUNDATION RESOLUTION CORP.,**

     **Plaintiff,**

**v.**                                                        **Case No: 5:18-cv-458-Oc-30PRL**

**AON HEWITT INVESTMENT
CONSULTING, INC. and ALIGHT
SOLUTIONS, LLC**

     **Defendants.**

_____

# REPORT & RECOMMENDATION[1]

Defendants in this ERISA case, Aon Hewitt Investment Consulting, Inc. and Alight Solutions, LLC (referred to collectively as "Aon"), have filed a motion to dismiss, arguing Plaintiff has failed to state a claim under both ERISA and state law. (Doc. 22). Plaintiff has responded to the motion to which Defendants have filed a reply and Plaintiff a sur-reply. (Doc. 28, 34, 39). The matter is now ripe. Upon referral from the district judge, I submit that the motion is due to be denied.

## I.   BACKGROUND[2]

According to the complaint, Plaintiff, Foundation Resolution Corporation (FRC), is a not-for-profit corporation chartered to assist the Citrus County Hospital Board to operate the Citrus

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] At this stage in the proceedings, the facts alleged in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).

Memorial Hospital System. (Doc. 1 ¶¶17–19). FRC operated the hospital from 1990 to 2014 pursuant to a long-term lease agreement with the hospital board. (Doc. 1 ¶¶20, 23).

FRC also sponsored and administered the Citrus Memorial Health Foundation, Inc., Pension Plan. (Doc. 1, ¶¶1, 9). In 2014, when FRC's long-term lease with the hospital board ended, FRC employed Aon to assist and advise in terminating the pension plan. (Doc. 1 ¶1). The terms of the agreement between the parties were memorialized in the Master Consulting Agreement (MCA), attached to the complaint and signed by FRC's pension committee. (Doc. 1, Exh. 1). Aon agreed to provide a variety of services to FRC, including "investment consulting and delegated investment management," and advice on structuring a lump-sum payment option for beneficiaries that would save the plan money. (Doc. 1 ¶35).

FRC maintains that instead of performing its obligations, Aon pursued a risky investment strategy that did not meet the needs of the pension plan, that Aon failed to disclose known risks, and that Aon's actions "ultimately resulted in millions of dollars of losses to the Plan." (Doc. 1 ¶3). FRC further alleges that Aon failed to communicate to beneficiaries about the lump-sum option which caused the number of participants in the lump-sum plan to fail to meet expectations, costing the plan $6 million. (Doc. 1 ¶7). And Aon failed to take adequate steps to adjust its strategy when it was clearly not working—instead maintaining its overreliance on Aon's proprietary funds, which deprived the plan of the liquidity it needed at the time. (Doc. 1 ¶6).

FRC brought this complaint alleging breaches of fiduciary duty under ERISA § 404(a) by Aon Investing (Count I) and by Aon Consulting (Count II).[3] In Count III, FRC alleged a claim of professional malpractice against Aon Consulting, accusing the firm of rendering negligent

---

[3] According to the complaint, Aon Investing is Aon Hewitt Investment Consulting, Inc., and Aon Consulting is Alight Solutions LLC. (Doc. 1 ¶¶ 10–11).

professional advice, while in Count IV, it alleged breach of the MCA by Aon Consulting. Aon has moved to dismiss the complaint, which FRC opposes. (Doc. 22).

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely

legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d 1290 (quoting *Iqbal*, 556 U.S. at 682).

## III.  DISCUSSION

Aon argues FRC's ERISA claims are due to be dismissed because: (1) neither FRC nor Aon is a fiduciary of the plan; and (2) there was no actual injury to the plan because the plan was capable of meeting its obligations to beneficiaries. Aon also argues that FRC has failed to state a claim for its two state law claims for professional malpractice and breach of contract.

### A.  Fiduciary Status

ERISA protects employee pensions and other benefits by, among other things, "setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). Section 409 of ERISA creates liability for: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title." 29 U.S.C. § 1109. The threshold question in a breach of fiduciary duty claim is whether the defendant "was acting as

a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

An entity performs a fiduciary function under ERISA § 3(21) when it: (1) "exercises any discretionary authority or discretionary control respecting management of [an ERISA] plan"; (2) "has any discretionary authority or discretionary responsibility in the administration of [the] plan"; or (3) "exercises any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A). "Fiduciary duties imposed by ERISA include 'proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.'" *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985)).

"Proof of an entity's fiduciary status 'may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document.'" *Carolinas Elec. Workers Ret. Plan v. Zenith Am. Sols., Inc.*, 658 F. App'x 966, 969 (11th Cir. 2016) (quoting *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001)). Fiduciary status is not an "all-or-nothing" proposition—an entity's fiduciary status is analyzed "with respect to the particular activity at issue." *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005)).

### 1. FRC's Fiduciary Status

Under ERISA § 502, breach of fiduciary duty claims may be brought by either the Secretary of Labor, or a plan participant, beneficiary, or fiduciary. 29 U.S.C. § 1132(a)(2). FRC alleges it is a plan fiduciary with standing to sue under ERISA § 502. (Doc. 1 ¶106). Aon argues that FRC is

not a fiduciary but rather an employee sponsor as, it argues, the plan documents show.[4] (Doc. 23, Ex. A). Aon maintains that the proper party to bring an ERISA breach of fiduciary duty claim is FRC's pension committee, which is the named administer for the plan. (Doc. 23, §§ 3.1–3.14).

FRC responds in two ways. First, FRC argues that the pension committee was merely an agent of FRC, which created the committee, selected its members (who were also all members of FRC's board), and ratified and approved of all of the committee's actions with respect its relationship with Aon. *See, e.g.*, *Davies v. Owens Ill., Inc.*, 632 So. 2d 1065, 1066 (Fla. 3d DCA 1994) (explaining that "actions of corporate directors and officers are attributable to the corporation itself"). According to the plan documents, FRC's board of directors selected the members of the pension committee and had the authority to remove and replace members of the committee at will. (Doc. 23, Ex. § 3.1(b)).[5]

Second, even if the pension committee is considered a separate entity, FRC points out that, according to the complaint, FRC itself actively solicited investment management services,

---

[4] Because Aon's motion is a motion to dismiss, not a motion for summary judgment, the Court normally would not be permitted to consider extrinsic evidence not attached to the complaint. In asking the Court to consider the plan documents to contradict FRC's allegations, Aon relies on an exception to the rule for documents "incorporated by reference." Under that exception, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

FRC does not dispute the authenticity of the plan documents filed with Aon's motion to dismiss, and the plan is clearly important to FRC's claims. It is important to note, however, that to the extent the plan documents do not "plainly show" that "the complaint's allegations are untrue by providing 'specific factual details' that 'foreclose recovery as a matter of law,'" the Court cannot disregard FRC's allegations. *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1254 (11th Cir. 2016).

[5] Although not relied upon by the Court, FRC has filed a verified resolution by the pension committee ratifying the FRC's decision to bring the complaint. (Doc. 40). The resolution explains that the pension committee was a creation of FRC and acted on FRC's behalf in administering the plan. It further explains that "to the extent [the pension committee] is or could be deemed to have retained Aon, it did so with the prior knowledge and authorization of FRC." (Doc. 40). The pension committee's verified resolution concludes by ratifying and adopting FRC's complaint in this matter and agreeing to be "bound by the results of the Action Against Aon to the same extent and with the same full force and effect as FRC." (Doc. 40).

evaluated those proposals, and agreed to employ Aon to manage the plan's investments. *See* (Doc. 1, ¶¶25, 33). The plan documents explain that the pension committee "shall control and manage the operation and administration of the Plan, *except with respect to investments*." (Doc. 23, Ex. A § 3.1(a)) (emphasis added). This provision, according to FRC, explicitly reserves management and control of investment decisions with FRC. FRC alleges that its subsequent conduct made it clear that FRC controlled investments decisions—FRC solicited proposals to manage the plan's investments, evaluated Aon's proposal, and ultimately made the decision to accept Aon's proposal. (Doc. 1 ¶¶25, 33, 48).

Ultimately, whether an employer steps out of its role as plan sponsor and actually has or exercises discretionary authority over the plan is a functional inquiry not limited to merely looking at the employer's formal role. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (noting ERISA defines fiduciary "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties" (citation omitted)). FRC, here, has alleged facts that would appear to show, if proven, that it functioned as a fiduciary of the plan—namely, that it exercised discretionary authority over the plan's investments by soliciting, evaluating, and approving of the plan's investment strategy and deciding to make a lump-sum allocation. (Doc. 1 ¶¶ 25, 33, 44). And FRC has provided a plausible interpretation of the plan documents that would support its allegations. *See* (Doc. 23, Ex. A § 3.1(a)).

Alternatively, even if the Court disregarded these allegations and accepted Aon's argument that the pension committee was the actual fiduciary here, FRC has alleged that it acted as the principal for the pension committee and acted through the committee. (Doc. 1 ¶ 9). Thus, making

FRC a fiduciary for ERISA purposes. *See* 29 U.S.C. § 1002(21)(A) (defining fiduciary to include persons who actually exercise control or authority over plan management and assets).

Given these allegations of fiduciary status both as a formal matter in that the plan reserves management and control of investments with FRC, and as a functional matter in that FRC actually did control such activities through its control of the pension committee, Aon has not demonstrated that FRC has failed to properly allege its fiduciary status.

2. *Aon's Fiduciary Status*

Because each entity's fiduciary status raises somewhat different issues, it is necessary for the purposes of this issue to distinguish between the two Defendants: Aon Hewitt Investment Consulting, Inc. (Aon Investing) and Alight Solutions, LLC (Aon Consulting). The complaint alleges that Aon Investing breached its fiduciary duties in (1) failing adequately to investigate the suitability of its recommended investment plan; (2) misrepresenting the nature of the investment strategy and not disclosing weaknesses with the plan; (3) "exposing the plan to excessive undisclosed risks"; and (4) "failing to monitor and appropriately adjust the investments of the Plan." (Doc. 1 ¶104, 112). Aon counters that the services it provided were merely recommendations and ministerial in nature, not discretionary.

In section five of Appendix A of the MCA, Aon Investing "acknowledges that, at all times during the term of this Schedule, and with respect to all services provided under Appendix A, it is a 'fiduciary' as defined under Section 3(21) of ERISA." (Doc. 1, p. 49 §5(b)). Appendix A specifies a wide variety of services that Aon Investing will provide the plan, including assisting the pension committee in "designing a customized investment strategy to hedge (reduce) pension surplus risk"; conducting "an assessment-liability study to assist the [pension committee] in determining the appropriate investment allocation and risk budgeting objectives for the Plan"; and

monitoring "this program daily and implement[ing] portfolio allocation changes as necessary." (Doc. 1, p. 52).

As to Aon Consulting specifically, the complaint further alleges that "Aon Investing and Aon Consulting, as Aon, presented themselves as acting in a coordinated and integrated fashion in advising FRC through Aon's Delegated Pension Manager solution, so as to reduce risk exposure through multiple phases of plan management up to and including Plan Termination." (Doc. 1 ¶40). The complaint alleges that the two Aon entities developed "a customized investment strategy" which they implemented and then monitored with the duty to "implement changes to the portfolio allocations as necessary." (Doc. 1 ¶36).

FRC alleges, as well, that Aon exercised de facto control of the pension plan—exercising control of the plan's assets in order to implement a hedging strategy. (Doc. 1 ¶¶56–63). Further, FRC alleges that Aon Investing failed to properly monitor the hedge and then failed to properly liquidate the plan. (Doc. 1 ¶¶64–79). *See Useden v. Acker*, 947 F.2d 1563, 1578 n.18 (11th Cir. 1991) (acknowledging possible "de facto" control over an ERISA plan).

Aon counters that its role was merely to provide standard professional functions. *See* 29 C.F.R. § 2509.75-5 (explaining that "consultants performing their usual professional functions will ordinarily not be considered fiduciaries"). It emphasizes that many of the services referenced in Appendix A relate to recommendations and suggestions to the pension committee and that the ultimate authority for the resulting decisions ran to the pension committee.[6]

---

[6] Aon's argument that it did not act as an ERISA fiduciary because it was merely providing recommendations is curious as the definition of fiduciary explicitly refers to "investment advice" as does the relevant regulation which appears to specifically envisions that parties making recommendations could meet the definition of "fiduciary" in at least some circumstances. *See* 29 C.F.R. § 2510.3-21 (defining "fiduciary").

The cases relied on by Aon, however, largely relate to the provision of professional services such as legal services or record-keeping and actuarial services, not investment advice. *See Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1082 (11th Cir. 1994) (affirming summary judgment based on lack of fiduciary status for insurance company that provided drafting, actuarial, and record-keeping services). In fact, ERISA section 3(21) specifically includes as fiduciaries anyone who "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21). Plaintiff clearly alleges that Aon provided investment advice. (Doc. 1, ¶¶ 4, 8, 31, 110).

Aon also argues that under the terms of the MCA it only served as a "named fiduciary" for "services described in Section 4 of Appendix A." (Doc. 1, p. 48).[7] While this fact might arguably create an ambiguity between this provision of the MCA and the later provision acknowledging Aon's status as a fiduciary under ERISA § 3(21) (although the MCA seems to be distinguishing between "fiduciary" and "named fiduciary"), it does not undermine the plain allegations that Aon did in fact act as a fiduciary with respect to the services for which it was alleged to have breached its fiduciary obligations. *See Carolinas Elec.*, 658 F. App'x at 969 (noting that fiduciary status can be based on factual circumstances even if contractual provisions are to the contrary).

Given Aon Investing's explicit acknowledgement of its status as a fiduciary under Section 3(21) of ERISA in the MCA and the allegations of Aon Investing's and Aon Consulting's actually offering investment advice with respect to the plan, Aon's motion to dismiss is due to be denied on this issue as well.

---

[7] Section four of Appendix A is titled "Selection and Monitoring of Sub-Advisers" and lists a variety of functions for which Aon Investing is a named fiduciary, which related to selecting and monitoring sub-advisors to the plan. It does not appear, however, that FRC has alleged a fiduciary breach with respect to these services.

3.  *Injury to the Plan*

ERISA suits by a fiduciary to recover losses to a plan are authorized by § 502, codified at 29 U.S.C. § 1132(a)(2). The Supreme Court has held, in the context of defined benefit plans, that claims for relief must relate to losses to the plan itself, not individual beneficiaries. *See Mass. Mut. Life Ins. Co. v. Russel*, 473 U.S. 134, 139–44 (1985). Aon argues that FRC's claim fails to allege that the plan itself suffered any losses in this instance since FRC "must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999).

As the language of ERISA § 409 makes clear, fiduciaries are "personally liable to make good to [ERISA plans] any losses to the plan resulting from each [breach of fiduciary duty], and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109. Claims for breach of fiduciary duty under section 502 (a)(2) of ERISA include claims for "lost profits" based on the supposed value of the plan had there been no breach. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008). Individuals seeking damages based purely on statutory violations where plaintiffs fail to allege a real risk of default on behalf of the plan, however, do not have standing. *See, e.g.*, *Lee v. Verizon Commc'n*, 837 F.3d 523, 530–31 (5th Cir. 2016) (explaining plaintiffs lack standing to pursue purely statutory violations of ERISA).

In its argument, Aon relies on cases where plaintiffs assert injuries based purely on statutory violations of ERISA not actual, concrete injuries. *See, e.g.*, *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580–83 (6th Cir. 2016) (dismissing for lack of standing claim based on statutory violation under ERISA § 502(a)(1)(B)).[8] In addition, Aon cites instances of claims where

---

[8] It is somewhat telling that many of the cases relied on by Aon arise in the context of denial of benefits under § 502(a)(1)(B) not breach of fiduciary claims under § 502(a)(2).

parties allege a breach of fiduciary duty, but the plan itself remained overfunded notwithstanding the alleged breach. *See Thole v. U.S. Bank, Nat'l, Ass'n*, 873 F.3d 617, 626–30 (8th Cir. 2017) (affirming dismissal of claim where plan was overfunded based, in part, on the possibility that such suits would needlessly deplete plan resources).

Neither scenario is applicable here. The proper focus in an ERISA breach of fiduciary duty claim is on "'losses to the plan resulting from' the [d]efendants' breaches of fiduciary duties." *Perez v. Bruister*, 823 F.3d 250, 266 (5th Cir. 2016) (quoting ERISA § 409(a)). The complaint alleges that Aon's breach of its fiduciary duty reduced the plan's liabilities by over $25 million and cost the plan "many thousands of dollars more in investment management fees." (Doc. 1 ¶¶4, 8). In its prayer for relief, FRC states that it is seeking benefits on behalf of the plan in the form of a judgment requiring Aon to "pay and restore to the Plan . . . full restitution and compensation to the losses to the Plan" resulting from Aon's breach of its fiduciary duty not losses to FRC. (Doc. 1, ¶¶108, 118).

These allegations relate to losses to the plan and seek relief that would go to the plan, not to FRC itself or unharmed beneficiaries, and are cognizable under ERISA. *See LaRue*, 552 U.S. at 253 n.4.

**B.  Professional Malpractice Claim**

Next, Aon argues that FRC's state law claim for professional malpractice should be dismissed because (1) Aon owed no duty to FRC and because (2) the economic-loss doctrine bars a professional malpractice tort claim based on a contractual relationship. (Doc. 22, pp. 15–19).

*1.  Duty to FRC*

In order to state a claim for negligence, a party must allege facts that show "that the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon

the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Gale v. Williams*, 701 N.E.2d 808, 810 (Ill. App. Ct. 1998).[9]

Aon's argument on this point is essentially the same as its argument that FRC is not a fiduciary of the plan—that is, the MCA is an agreement between Aon and the pension committee, not FRC itself. Assuming for the sake of argument that Aon is correct that investment advisors do not owe duties to third parties under Illinois law (although the only case Aon cites for this proposition deals with an attorney-client relationship), FRC alleges that the pension committee was entirely a creation of FRC, which controlled its board, and which acted as FRC's agent. Moreover, the complaint alleges that FRC actually solicited Aon's offer and agreed to the terms of the MCA—even though the pension committee formally signed the agreement. Aon does not refute these allegations directly. Thus, FRC has alleged a plausible set of facts which, if proven, would establish a fiduciary duty by Aon.

### 2. Economic Loss Doctrine

Under Illinois law, a plaintiff "cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982). But there are several exceptions to that rule, including "where the plaintiff's damages were proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 993 (E.D. Ill. 2010). "The Illinois Supreme Court's test for determining whether a defendant 'is in the business of supplying information for the guidance of others in their business transactions' is whether the

---

[9] The MCA purports to be governed by Illinois law, and both parties cite Illinois law in their briefs without identifying any conflicting law. (Doc. 22, p. 16 n.6). Thus, the Court will assume for the purpose of the motion to dismiss that Illinois law applies.

end product of the relationship between plaintiff is a tangible object (i.e., a product) which could be readily described in a contract or whether it is intangible." *Id.* (quoting *MW Mfrs., Inc. v. Friedman Corp.*, 1998 WL 417501, at *4 (N.D. Ill. July 21, 1998)).

Thus, under Illinois law, the economic loss doctrine bars "claims of negligence against engineers and architects (who supply products such as drawings and plans), but not claims against attorneys, accountants, insurance brokers, investment consultants, and environmental consultants (who supply information such as advice and counseling)." *Id.*

Here, Plaintiff's complaint plainly alleges that FRC contracted with Aon for information— meaning investment advice and consulting services. (Doc. 1 ¶ 121) ("FRC was a client of Aon Consulting, and hired Aon Consulting for, among other things, *professional advice and consulting services* regarding lump sum windows and related matters.") (emphasis added). Thus, FRC's allegations fit within the exception to the economic-loss doctrine for supplying information or guidance to other.[10]

### C.  Breach of Contract Claim

Finally, Aon argues that FRC's breach of contract claim should be dismissed as well based on the fact that (1) FRC was not a party to the contract, (2) FRC has not pleaded direct damages and the MCA prohibits consequential damages, and (3) FRC has not pleaded that the pension committee performed all of its obligations under the contract.

---

[10]  Aon cites cases that describe this exception as based on "an extracontractual duty." *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E. 2d 503, 514–15 (Ill. 1994) (recognizing that duties owed a professional such an attorney to a client are "extracontractual" in the sense that it is not "necessary or generally possible to memorialize all the elements of 'competent representation' in a contract"). Regardless of how the issue is characterized, the test is the same—whether the service provided is a tangible thing or intangible advice or information. *Id.* ("Application of the *Moorman* doctrine limiting recovery of purely economic losses to contract, therefore, is inappropriate where a relationship results in something intangible.").

1. *FRC's Authority to Sue*

Aon's argument as to FRC not being a party to the contract raises essentially the same issue discussed above in Aon's argument that FRC is not a fiduciary and that Aon owed FRC no duty. For the same reasons that the Court submitted that FRC has properly pleaded its fiduciary status and its professional malpractice claim, the Court submits that FRC is a proper party to the contract—namely, FRC has alleged that it solicited and agreed to the MCA with the pension committee acting as its agent.

2. *Entitlement to Relief*

Aon argues that the MCA excludes the possibility of recovery for consequential damages, including lost profits, as well as benefit payment obligations, amounts in excess of fees paid in a 12-month period, and investment losses. (Doc. 1, pp. 44–45, 49). FRC maintains that it has pleaded an entitlement to direct, not consequential, damages. (Doc. 28, p.p. 18–20).

Direct damages are "[d]amages that the law presumes follow the type of wrong complained of." *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174 (Ill. App. Ct. 2015) (quoting Black's Law Dictionary 395 (7th ed. 1999)). Consequential damages, conversely, refer to "loss or injury that does not flow directly and immediately from the wrongful act of a party but are the consequences or results of such an act." *Hartford Accident & Indem. Co v. Case Found. Co.*, 294 N.E.2d 7, 14 (Ill. App. Ct. 1973). The difference between direct and consequential damages lies "in the degree to which the damages are a foreseeable (that is, a highly probable) consequence of a breach." *Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002). Under Illinois law, contractual provisions limiting damages are enforceable but "such clauses are not favored and will be strictly construed against a benefitting party." *Westlake*, 25 N.E.3d at 1174.

FRC has alleged that Aon Consulting did not perform under the MCA by "failing to provide the comprehensive communications campaign as agreed for the Plan's lump sum window" detailed in the attached schedules. (Doc. 1 ¶¶ 91, 127). FRC then alleges damages "for the losses resulting from Aon Consulting's breach of the MCA" as well as disgorgement of "all fees and other amounts Aon Consulting received for providing services in connection with the lump sum window." (Doc. 1 ¶129). The complaint does not purport to seek consequential damages or lost profits on the breach of contract claim.

Aon argues that FRC is not entitled to full restitution of its fees and that a calculation of any plan deficit caused by its breach would be too speculative and remote from the actual breach. Whatever the ultimate merits of these arguments, the issue would seem to require resolving highly disputed issues of fact as to the scope of the promises made and the reasonable expectations of the parties—not to mention complex damages calculations. At this stage, it is sufficient to note that FRC alleges that Aon breached its agreement by failing to provide services in accordance with the terms of the contract and that breach caused losses to the plan. Aon has not met its burden to show that FRC has failed to state a claim for breach of contract on which relief might be granted.

### 3.   *Conditions Precedent*

Lastly, Aon argues that FRC has not pleaded that all conditions precedent to performance under the contract have been performed. (Doc. 22, pp. 24–25). But FRC has, in fact, alleged that "All conditions precedent to the bringing of this action have occurred, been waived or satisfied, or would be futile to further attempt to satisfy (including, but not limited to, the pre-suit dispute resolution process in Section 10 of the MCA)." (Doc. ¶98). Rule 9(c) allows a party "to allege generally that all conditions precedent have occurred or been performed."[11] Fed. R. Civ. P. 9.

---

[11] Aon's reliance on *Hoopla Sports & Entm't, Inc. v. Nike, Inc.*, 947 F.Supp. 347, 357 (N.D. Ill. 1996), is unavailing as in that case nothing in the contract provided even the basic contents of the alleged

## IV.    RECOMMENDATION

For these reasons, it is **RECOMMENDED** that Defendants' motion to dismiss be **denied**.

(Doc. 22).

**Recommended** in Ocala, Florida on March 1, 2019.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

agreement and there was "nothing in the complaint that even [told the court] what the plaintiff's obligations were."